DOMITILA LÓPEZ, demandante y apelada, *v.* MARTÍNEZ HNOS. & Co., S. EN C., como liquidadora de MARTÍNEZ HNOS. & Co., demandada y apelante.

No. 5868.—*Sometido:* Marzo 27, 1933. *Resuelto:* Julio 22, 1933.

*J. P. Miranda,* abogado de la apelante; *Pedro G. Quiñones,* abogado de la apelada.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Domitila López demandó en la Corte Municipal de San Juan a Martínez Hermanos y Co., S. en C., como liquidadora de Martínez Hermanos y Co. en solicitud de una sentencia que declarara nulo y sin ningún valor cierto embargo trabado sobre una casa de la demandante a instancias de la demandada en un pleito en cobro de pesos que siguiera

contra Rufino Font, y nula y sin ningún valor también la subasta de dicha casa celebrada a los efectos de ejecutar la sentencia dictada en el indicado pleito. Contestó oponiéndose la demandada y fallado el caso, la parte perdidosa lo llevó a la corte de distrito. Celebrado el juicio de nuevo, fué resuelto el caso en contra de la demandada. Apeló ésta para ante la Corte Suprema que revocó la sentencia recurrida el 10 de febrero último. Pidió reconsideración la demandante y la corte accedió, oyéndose otra vez a ambas partes y quedando así el caso finalmente sometido a nuestra consideración y resolución.

Las alegaciones y las pruebas demuestran lo que sigue:

En marzo 5, 1930, Martínez Hermanos y Co. demandó en la Corte Municipal de San Juan a Rufino Font en cobro de $475 y el mismo día solicitó el aseguramiento de la sentencia que pudiera pronunciarse. Accedió la corte; señaló la demandante como bienes a embargar una casa del demandado situada en Santurce y el secretario de la corte en marzo 6, 1930, dirigió al registrador de la propiedad el siguiente mandamiento:

"En la corte municipal del distrito judicial municipal de san juan, p. r., sección segunda.—estados unidos de américa, El Presidente de los E. U., SS.—martínez hermanos y co., Demandante, vs. rufino font, Demandado.—Civil No. 8828. Sobre: Cobro de Dinero.—mandamiento de embargo.—el pueblo de puerto rico a el Hon. Registrador de la Propiedad de San Juan, Sección Primera.

"Por cuanto en el caso arriba titulado, la Corte Municipal del Distrito Judicial Municipal de San Juan, P. R., Sección Segunda ha dictado una orden que copiada literalmente dice así:

" 'orden.—Vista la moción sobre aseguramiento de sentencia presentada en este caso por la demandante la Corte la declara con lugar y decreta el aseguramiento de la sentencia en el caso del epígrafe, sin fianza, por constar la deuda en documento auténtico que consta en autos y ordena al Secretario expida mandamiento de embargo para ser diligenciado o anotado por el Registrador de la Propiedad de San Juan, P. R., Sección Primera sobre los bienes del demandado Rufino Font, hasta cubrir la suma de $475.00 y las costas

del procedimiento. Dada en San Juan, P. R. a 6 de marzo de 1930. (Firmado) Y. Carballeira, Juez.'

"Por cuanto la demandante ha señalado al Secretario que suscribe la siguiente propiedad del demandado Rufino Font para trabar sobre ella el embargo dictado:

" 'urbana: Casa de maderas con techo de zinc destinada a tienda, que mide cinco metros ochenta centímetros de frente por diez metros de fondo, radicada en terrenos pertenecientes a la Sucesión Finlay, situada en la Sección Norte del barrio de Santurce de esta ciudad de San Juan, colindante al Norte, Sur, Este y Oeste con terrenos de la Sucesión Finlay.'

"Esta finca no aparece inscrita en el Registro de la Propiedad a nombre del demandado ni de ninguna otra persona.

"La demandante 'Martínez Hermanos & Co.' es una sociedad mercantil, constituída al amparo del Código de Comercio y con domicilio en la ciudad de San Juan y el demandado Rufino Font es mayor de edad, comerciante, casado con doña Julia Olivera y vecino de San Juan.

"Por tanto:—El Secretario que suscribe en cumplimiento de la orden copiada requiere a Ud. Hon. Registrador de la Propiedad de San Juan, P. R., Sección Primera, para que se sirva anotar en los libros del Registro a su digno cargo el precitado embargo a favor de la mercantil 'Martínez Hermanos & Co.' y en contra del demandado Rufino Font por la suma de $475.00 de principal y $25.00 para costas sobre la finca arriba descrita y hasta nueva orden de la Corte.

"San Juan, P. R., a 6 de marzo de 1930.—(Fdo.) Regina Escudero, Sec. Corte Municipal de San Juan, P. R., Sección Segunda."

Recibido el mandamiento, el registrador hizo la anotación que sigue:

"Anotado al folio 185 del tomo 137 de Santurce Norte, finca 6430, anotación A, con el defecto subsanable de no aparecer inscrita la finca a nombre del demandado ni de ninguna otra persona. San Juan, marzo 7 de 1930. (Fdo.) A. Malaret, Registrador.—Derechos: $4 No. 175 Arl. y C. P.—(Hay cancelados en sellos de rentas internas $4.00). (Hay un sello de goma que dice: registro de la propiedad, San Juan, Puerto Rico)."

En marzo 27, 1930, el demandado Rufino Font fué emplazado personalmente en esta ciudad de San Juan, de acuerdo con la ley. No contestó y la demandante en abril

9, 1930, pidió al secretario que anotara su rebeldía y registrara sentencia en contra suya. Así lo hizo el secretario quedando la sentencia dictada y registrada el propio día 9 de abril de 1930.

En abril 28, 1930, la sentencia se notificó al demandado Font.

En mayo 26, 1930, Font compareció ante notario público y vendió la casa de que se trata a Domitila López, la demandante en este pleito. En la escritura dijo que la finca estaba libre de gravámenes, consignándose en ella que la venta se efectuaba por $400, pagándose de contado $300.

En junio 18, 1930, la demandante en el pleito en cobro de dinero contra Font, demandada en éste, pidió la ejecución de la sentencia que había obtenido en abril 9 y que se había notificado a Font en abril 28, por ser firme. Así lo ordenó la corte en junio 20, 1930, siguiéndose los procedimientos de ley que culminaron en la subasta celebrada en julio 22, 1930, en la que se adjudicó la casa en cuestión a la demandante por la suma de $250.

La corte de distrito falló el caso en contra de la demandada porque estimó que el embargo era nulo porque el secretario no tenía autoridad para trabarlo, citando el caso de *Rodríguez* v. *Registrador,* 42 D.P.R. 104, siendo nula en su consecuencia la venta de la casa en pública subasta de acuerdo con lo resuelto por este tribunal en el caso de *Rodríguez* v. *Alonso,* 37 D.P.R. 345.

Es cierto que en el caso de *Rodríguez* v. *Registrador,* 42 D.P.R. 104, resolvió esta corte que un embargo debe hacerse por el márshal bajo mandamiento librado por el secretario y no por éste; pero también lo es que posteriormente en el caso de *Ochoa Fertilizer Co.* v. *Registrador,* 43 D.P.R. 626, considerando la misma cuestión, se expresó como sigue:

"En su alegato el registrador expresa que a no ser por lo resuelto por esta Corte Suprema en el recurso gubernativo de Baudilia Rodríguez v. Registrador de Mayagüez, 42 D. P. R. 104, hubiera

practicado la anotación. La recurrente en el suyo invoca en su favor las decisiones de esta corte en los casos de Batle v. Registrador, 30 D. P. R. 745 y Santini Fertilizer v. Registrador, 36 D. P.R. 20, y distingue la del de Rodríguez, supra.

"Veamos lo que en verdad resolvieron las decisiones citadas.

"En el caso de Batle, supra, el Secretario de la Corte de Distrito de Ponce expidió un mandamiento dirigido al Registrador de la Propiedad de Arecibo a fin de que cancelara cierto embargo y anotara otro, todo, desde luego, ejecutando una orden de la corte. El registrador se negó a cumplir lo que se le ordenaba porque el mandamiento no había sido expedido por el márshal del distrito de Arecibo en que radicaba la finca embargada. Citó en apoyo de su negativa el artículo 97 del Reglamento Hipotecario, el 245 del Código de Enjuiciamiento Civil y las decisiones de esta corte en los casos de Luce v. Registrador, 28 D. P. R. 968 y Benet v. Hernández, 22 D. P. R. 249. Y esta corte resolvió que la segunda parte del artículo 97 del Reglamento Hipotecario, que era la pertinente, fué derogada por la Orden General No. 100, de 12 de abril de 1900, que dice: 'Por recomendación de la Junta Judicial se dispone lo siguiente: I. Los tribunales se comunicarán directa e indistintamente entre sí sin sujetarse a la antigua subordinación de tribunales inferiores y superiores que establece el artículo 237 de la Ley de Enjuiciamiento Civil. II. También podrán los tribunales dirigirse directamente a cualquier oficina del registro de la propiedad o de otra clase para el cumplimiento de las resoluciones judiciales que dictaren'; que esa orden estaba en todo su vigor, no obstante lo decidido por la Corte Suprema Nacional en el caso de Ochoa v. Hernández, 230 U. S. 139; que el caso de Luce, supra, se resolvió sin tener en cuenta la O. G. No. 100, de 1900, y el de Benet, supra, no era aplicable porque en él se trataba de un mandamiento de un márshal de un distrito al registrador de otro distrito, y que el artículo 245 del Código de Enjuiciamiento Civil se refería a la orden de ejecución y no enmendó la repetida Orden General. En su consecuencia se revocó la nota, dándose validez al mandamiento.

"Pasaron cuatro años y la doctrina del caso de Batle, supra, fué expresamente confirmada en el de Santini Fertilizer Co., Inc. v. Registrador, 36 D. P. R. 20.

"Antes de resolverse el caso de Rodríguez, supra, se decidió el de Vivaldi v. Registrador, 39 D. P. R. 721, en el que se estableció que 'Dirigido un mandamiento de embargo al márshal del distrito en que radica la finca a embargar, trabado el embargo, no es necesario un nuevo mandamiento dirigido al registrador para él verifi-

car la anotación del embargo; basta con el dirigido al márshal y su diligenciado.'

"Y entonces vino la decisión de Rodríguez v. Registrador, 42 D. P. R. 104, cuyo resumen dice:

" 'Un embargo debe hacerse por el márshal de la corte bajo el mandamiento librado por el secretario y no por éste; el secretario carece de facultades para tal acto.'

" * * * * * * *
" * * * * * * *

"A nuestro juicio habiendo en consideración lo resuelto en el caso de Batle, supra, confirmado en el de Santini, supra, y los términos en que está redactada la sección pertinente de la Ley sobre efectividad de sentencias, a saber: El embargo . . . de . . . inmuebles se efectuará anotándolo en el registro de la propiedad . . . Sec. 9 de la Ley para asegurar la efectividad de sentencias de marzo 1, 1902, Comp. 1911, p. 885, basta que la Corte decrete el embargo y su Secretario dirija mandamiento al registro en cumplimiento del decreto, para que el registrador pueda y deba anotarlo. Esto no quiere decir que si se ordena al márshal que practique el embargo, no pueda dicho funcionario hacerlo. Puede, tal como se resolvió en el caso de Vivaldi, supra. Para embargos de esta naturaleza, esto es, los ordenados practicar por medio de anotaciones en el registro, coexisten los dos medios. La orden emana siempre de la Corte y puede cumplirse por mandamiento expedido directamente al Registrador o al márshal como en los casos corrientes para que actúe."

Y seguidamente tratando de circunscribir el caso de Rodríguez a sus propios hechos, dijo:

"La decisión en el caso de Rodríguez, supra, está justificada por sus propios términos. El mandamiento expedido por el secretario en tal caso era improcedente ya que el embargo de bienes no es función suya. Y expresamente consignó que a solicitud de la demandante, había embargado el inmueble descrito."

Pueda o no distinguirse el caso de *Rodríguez* v. *Registrador,* la jurisprudencia sobre la materia quedó finalmente establecida para los casos que emanan de la Ley sobre Aseguramiento de Sentencias de 1902, como sigue:

"Decretado un embargo por la corte para asegurar la efectividad de la sentencia que pueda dictarse en el pleito, la orden para

que el embargo se practique por medio de anotación en el registro emana de la corte y puede cumplirse por mandamiento expedido por el secretario directamente al registrador o al márshal correspondiente como en los casos ordinarios para que actúe.''

Y aplicando esa jurisprudencia a este caso concreto, cae por su base la sentencia recurrida.

Siendo ello así, se hace innecesario detenernos en el estudio del caso de *Rodríguez Soler* v. *Alonso,* 37 D. P.R. 345, invocado por la corte de distrito, puesto que en él se decretó la nulidad de la venta partiendo de la base de la no existencia del embargo y aquí acabamos de concluir que el embargo existió.

Bastaría lo expuesto para decidir el recurso, si no se hubieran levantado por la parte apelada otras cuestiones que debemos estudiar y resolver.

█ Sostiene en primer término dicha parte que aunque el embargo hubiera podido anotarse en el registro a virtud del mandamiento del secretario, siempre sería nulo porque no se notificó al demandado en el pleito según ordena la ley.

La exacta cuestión sugerida fué resuelta en sentido contrario a la contención de la apelada por esta Corte Suprema en el caso de *Kuenzli* v. *Symister,* 43 D.P.R. 468. Hablando la corte por su Juez Asociado Sr. Aldrey, se expresó así:

''La Ley de Enjuiciamiento Civil que en materia de aseguramiento de sentencias rigió hasta 1902 disponía en su artículo 1409 que si los bienes embargados fuesen inmuebles se limitaría el embargo a librar mandamiento por duplicado al registrador de la propiedad para que extendiese la correspondiente anotación preventiva. La sección 9 de la referida ley de 1902 en que se funda el apelante para sostener que el embargo de la finca anotado en el registro es nulo y debe cancelarse por no haber sido notificado a sus dueños los esposos Angleró dice así:

'' 'El embargo y prohibición de enajenar inmuebles se efectuarán anotándolos en el Registro de la Propiedad y notificándolos al demandado, con la prevención de que no podrá enajenar los bienes embargados sino en pública subasta, con citación del demandante, quedando el precio consignado a disposición del tribunal, ni enajenar en ningún caso los bienes en que haya recaído la prohibición.

La enajenación de dichos bienes realizada en contravención a lo dispuesto en este artículo se reputará fraudulenta para todos los efectos civiles y penales, y las personas responsables del fraude serán castigadas además como culpables de desacato (desobediencia).'

"En varias decisiones de este Tribunal Supremo se ha hecho referencia a dicha sección en casos en que no estaba planteada la cuestión de la nulidad de un embargo de bienes inmuebles anotado en el registro por falta de notificación al dueño deudor sino otras de distinta naturaleza. Así, en el caso Oliver v. Registrador, 22 D. P. R. 708, lo único que se resolvió es que una finca embargada sin que conste del registro que ha sido prohibida su enajenación sin pública subasta, cuya prohibición especial requiere una notificación especial al dueño de la finca, puede ser enajenada sin subasta pública. En el de Rodríguez v. Corte de Distrito, 31 D. P. R. 694, la cuestión a decidir era si cuando se embargan plantaciones puede el márshal nombrar depositario para ellas y se decidió que cuando se trataba de frutos recolectados es procedente el nombramiento de un depositario pero que cuando son frutos pendientes se hace necesario constituir una administración judicial, aunque incidentalmente se dijo que cuando se embargan bienes inmuebles la función del márshal se limita a expedir mandamiento por duplicado al registrador de la propiedad, haciendo la correspondiente notificación al demandado. En el de Cosme v. Santi González, 37 D. P. R. 763, se trataba de si la corte en una acción personal había adquirido jurisdicción sobre la demandada no residente en esta Isla y se declaró que no la había adquirido porque aunque se había librado por el márshal mandamiento al registrador de la propiedad para que anotase el embargo de una finca de la demandada no constaba que el embargo fué anotado, aunque también incidentalmente, citando la sección 9 antes mencionada, se dijo que no puede entenderse trabado el embargo hasta que quede anotado en el registro y notificado al demandado. En el caso de Wenonah v. Antonsanti, 40 D. P. R. 263, también se trataba de si la corte había adquirido jurisdicción en acción personal sobre el demandado no residente y se dijo que cuando la citación por edictos del demandado se expidió ya el embargo estaba anotado en el registro, anotación que por sí constituye una notificación a todo el mundo, y que faltaba la notificación directa al demandado que la ley exige, sin decir cómo ha de hacerse, pero que fué hecha por carta a la dirección del demandado.

"La ley que contiene la sección 9 a que venimos refiriéndonos dice en su sección segunda que el aseguramiento de sentencia se

ajustará a las varias reglas que establece, de las cuales las dos primeras dicen así:

" '(*a*) Si la obligación reclamada fuere de dar cosa determinada poseída por el demandado o por un tercero a su nombre, se prohibirá al demandado, o al tercero, en su caso, la enajenación o gravamen de la cosa reclamada, hasta la resolución del pleito.

" '(*b*) Si la obligación fuere de pagar una suma de dinero, el aseguramiento consistirá en el embargo de bienes bastantes del deudor para responder de las sumas reclamadas.'

"De acuerdo con esa ley, que es la vigente, el aseguramiento de sentencia en el caso de Symister en cobro de dinero sólo podía consistir en el embargo de bienes de sus demandados sin prohibición de enajenarlos porque no reclamaba una cosa determinada, por lo que tal prohibición no fué decretada y consiguientemente no aparece en el registro. La notificación al demandado requerida por la sección 9 se refiere al caso en que se haya embargado un inmueble y se haya prohibido su enajenación, siendo necesaria la notificación al dueño porque no podrá venderlo sino en pública subasta con citación del demandante y depositando el precio en el tribunal, so pena de que la venta se repute fraudulenta y de que sea castigado por desacato; y no se refiere a un embargo sin esa prohibición porque si ésta no existe el dueño puede vender el inmueble embargado sin perjuicio de la persona a cuyo favor se haya hecho la anotación, según dispone el artículo 71 de la Ley Hipotecaria.

"Por lo expuesto la notificación requerida por la sección 9 de la ley para asegurar la efectividad de la sentencia no era necesaria en este caso y la sentencia apelada en cuanto no declaró nulo el embargo de la finca debe ser confirmada."

 Sostiene, por último, la dicha parte apelada que no existió embargo en este caso porque la finca objeto del mismo no estaba inscrita ni podía inscribirse en el registro de la propiedad porque era y es una finca edificada en solar ajeno.

En cuanto a que la casa no podía inscribirse por estar edificada en solar ajeno, no tiene razón la apelada. Desde 1915 decidió esta Corte que puede. *Martín et al.* v. *Registrador de Arecibo,* 22 D.P.R. 149.

Y tampoco la tiene en cuanto a que no estando inscrita la finca no cabe anotar el embargo.

En el caso de *Sobrinos de Villamil* v. *Registrador,* 32 D.P.R. 545, hablando la corte por su Juez Asociado Sr. Wolf, dijo:

"**El artículo 92 del reglamento hipotecario, en su parte pertinente,** prescribe lo que sigue:

" 'Se hará anotación preventiva de todo embargo de bienes inmuebles o derechos reales que se decrete en juicio civil o criminal, aunque aquél sea preventivo, debiendo observarse las reglas siguientes:

" 'Primera.— * * * * *

" 'Segunda.—Si la propiedad de los bienes embargados no constare inscrita, se suspenderá la anotación del embargo, y en su lugar se tomará anotación preventiva de la suspensión del mismo por ser subsanable aquel defecto.'

"Las derogaciones tácitas no son favorecidas. La idea de los autores de la Ley Hipotecaria fué conceder a un ejecutante ciertos derechos contra el público aun cuando no estuviera inscrita la propiedad embargada. En relación con esto los señores Galindo y Escosura, Legislación Hipotecaria, tomo 2, pág. 444, se expresan como sigue:

" 'Si del registro apareciese que los bienes estaban inscritos a favor de persona distinta del ejecutado, denegará la anotación; y si no estuvieren inscritos a favor de nadie, la suspenderá hasta que aquél a quien interese (si pretende en ambos casos que el dueño verdadero es el ejecutado) logre por los medios legales que se inscriban a nombre del deudor, y a continuación se anote el embargo.'

"Este derecho no se anula porque la ley haya variado. Lo principal no sigue a lo accesorio, pero sí lo contrario, y el ejecutante tiene derecho a cierta especie de anotación. Esto no se alcanza por medio de una anotación preventiva por el término de 120 días, toda vez que no sólo cualquier litigio podría sobrepasar dicho límite sino que sería discutible si la prohibición de no enajenar habría de ser eficaz sin tal anotación."

Más tarde en el caso de *Armstrong* v. *Registrador,* 34 D.P.R. 267, por medio de su Juez Asociado Sr. Aldrey, se expresó así:

"El artículo 92 del Reglamento Hipotecario estableciendo las reglas que deben seguirse para la anotación preventiva de embargo de

bienes inmuebles o derechos reales decretado en juicio civil o criminal· dispone en la segunda de ellas que si la propiedad de los bie-·nes embargados no constare inscrita se suspenderá la anotación del embargo, y en su lugar se tomará anotación preventiva de la suspensión del mismo por ser subsanable aquel defecto; y el artículo 96 de la Ley Hipotecaria declara que la anotación exigida a consecuencia de no poder verificarse la inscripción por defecto subsanable del título presentado caducará a los 60 días de su fecha, plazo que es prorrogable a 180 días, a no ser que el título presentado emane. de autoridad judicial, en cuyo caso sólo podrá prorrogarse por otro de igual clase. De acuerdo pues con esos preceptos el embargo no se anotaba sino que se suspendía la anotación y se tomaba anotación preventiva de la suspensión por 60 días prorrogables.

"En el año 1902 (p. 313) se aprobó una ley sobre recursos contra resoluciones de los registradores de la propiedad en cuya sección cuarta (Comp. 2183) se ordena a los registradores que no suspendan por defectos subsanables la inscripción, anotación o cancelación de ningún título y que hagan constar en la inscripción los defectos que contenga el título, así como que en cualquier tiempo en que se presente la documentación para subsanarlos harán constar la subsanación por nota marginal; y la sección 7ª (Comp. 2186) dispone que cuando nieguen la inscripción, anotación o cancelación extiendan anotación preventiva por 120 días. Como consecuencia de esta ley los mandamientos de embargo que antes no se anotaban cuando la finca no estaba inscrita en el registro a nombre de persona alguna sino que se suspendía la anotación y se tomaba anotación preventiva por ser subsanable ese defecto hay que anotarlos ahora haciendo constar dicho defecto, porque según la ley citada de 1902 no puede negarse la anotación por defectos subsanables y por tanto no procede suspender ni negar la anotación tomando anotación preventiva de la suspensión por 120 días porque esta anotación sólo es procedente ahora cuando existe defecto insubsanable. En el caso de Duperón v. El Registrador, 15 D. P. R. 63, único que hemos encontrado en nuestras decisiones con respecto a la regla segunda del artículo 92 del Reglamento Hipotecario, aunque este tribunal confirmó la negativa del Registrador negando la anotación de un embargo por no estar inscrita la finca embargada, habiéndose tomado anotación preventiva por 120 días, la cuestión que ahora consideramos no fué tratada sino únicamente que dicho artículo y regla no estaban en contradicción con la ley para asegurar la efectividad de las senten-

cias por lo que no estaba derogado por ella, que parece fué la única cuestión suscitada por el recurrente.

"Por consiguiente, la doctrina expuesta en el caso de Sobrinos de Villamil contra El Registrador, supra, ha de entenderse modificada en el sentido de que la regla segunda del artículo 92 del Reglamento Hipotecario no está vigente en cuanto dispone que si la finca embargada no está inscrita se suspenda la anotación y se tome anotación preventiva de la suspensión puesto que esto no puede hacerse después de la ley de 1902 citada sino que hay que verificar la anotación del embargo haciendo constar ese defecto subsanable."

Y, por último, en el de *Moscoso Hermanos v. Registrador*, 35 D.PR. 1054, *per curiam*, decidió:

"Por los fundamentos de los casos de Villamil v. El Registrador, 32 D. P. R. 545, y Armstrong v. El Registrador, 34 D. P. R. 267, se revoca la nota del Registrador de la Propiedad de Humacao de fecha diciembre 15, 1925, y se ordena la anotación de embargo solicitada con el defecto subsanable de no estar inscrita la finca embargada."

Quizá sea conveniente agregar que una de las cuestiones levantadas en el pleito por la parte demandada fué la de que la venta de la casa hecha como fué a la demandada por Rufino Font el 26 de mayo de 1930 después de haberse dictado sentencia contra Font el 9 de abril anterior, debe presumirse en fraude de acreedores de acuerdo con lo prescrito en el artículo 1249 del Código Civil, Ed. 1930, a saber: ". . . También se presumen fraudulentas las enajenaciones a título oneroso, hechas por aquellas personas contra las cuales se hubiere pronunciado antes sentencia condenatoria en cualquier instancia, o expedido mandamiento de embargo de bienes."

*Debe revocarse la sentencia recurrida y en su lugar dictarse otra desestimando la demanda, sin especial condenación de costas.*

El Juez Asociado Señor Wolf está conforme con el resultado.