Manuel Peña Burgos, peticionario, *v.* Tribunal de Distrito de Puerto Rico, Sección de Bayamón, Hon. Fernando Gallardo Díaz, Juez, demandado; Panax Food Stores, Inc., interventora.

Número 1927.

*Sometido:* 1 de junio de 1952. *Resuelto:* 30 de abril de 1956.

*Justo A. Casablanca,* abogado del peticionario; *Rodolfo F. Aponte* y *F. Fernández Cuyar,* abogados de la interventora.

EL JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ emitió la opinión del Tribunal.

El 19 de abril de 1950 Panax Food Stores, Inc., aquí Interventora—a la que en lo sucesivo llamaremos Panax—inició pleito en ejecución de hipoteca por la vía ordinaria[1] en el Tribunal de Distrito de Puerto Rico, Sección de Bayamón, contra Luis F. Balaguer y su esposa Dolores Peña, en cobro de un pagaré hipotecario pagadero a presentación por la suma de $5,000,[2] para garantizar el cual constituyeron primera hipoteca voluntaria, en la misma fecha, sobre un edificio[3] construído en terrenos ganados al mar, propiedad de El Pueblo de Puerto Rico, el cual no se hallaba inscrito en el Registro de la Propiedad.

El 20 de abril de 1950—a instancias de Panax—a fin de "asegurar la efectividad de la sentencia solicitada, embargando la propiedad hipotecada y anotando el embargo en el Registro de la Propiedad a los efectos de protegerse contra los derechos que un tercero pudiere adquirir sobre dicha propiedad antes de que se dicte sentencia" el tribunal dictó orden para que se expidiera mandamiento de embargo dirigido al Registrador de la Propiedad de Bayamón, para que anotara el mismo sobre el inmueble de referencia por la suma de

---

[1] La acción fué correctamente considerada por el tribunal en cobro de dinero, por no constar inscrita la hipoteca cuyo pago se reclamaba.

[2] Se alegó en la demanda que los demandados, a la fecha de iniciarse el pleito, habían abonado la suma de $1,000 y que a dicha fecha adeudaban $4,000 del principal más los intereses al 6% desde el 16 de diciembre de 1949.

[3] Dicho edificio se describe así:

"URBANA: Edificio de apartamientos, de dos plantas, de concreto armado y con techo de azotea de concreto, que mide cincuenta (50) pies de frente por cincuenta (50) pies de fondo, y contiene ocho (8) apartamientos para viviendas, cuatro (4) en la planta baja y cuatro (4) en la planta alta. Es conocido con el nombre de 'Shangri-La Apartments', y colinda por el norte con la Bahía de San Juan, por el sur con terrenos de Marcos Caneja, por el este con terrenos del Gobierno de los Estados Unidos de América (Army Terminal) y por el oeste que es su frente, con la Calle Número Cinco del Barrio Sabana, término municipal de Guaynabo. Está construída en terrenos ganados al mar, propiedad del Pueblo de Puerto Rico".

$4,000. de principal, de $80 de intereses vencidos y $500 para costas y honorarios de abogado.   En esa misma fecha se expidió dicho mandamiento, presentándose para anotación en el Registro el propio día 20 de abril.(⁴)

El 3 de mayo de 1950 Manuel Peña Burgos, aquí peticionario, solicitó del tribunal—y éste le concedió—un término de 30 días para intervenir en dicho pleito, fundándose en que tenía un crédito preferente contra los demandados.   Panax solicitó el día 8, y obtuvo al siguiente, la anotación de la rebeldía contra éstos.

El 8 de junio siguiente presentó Peña Burgos su Demanda de Intervención alegando, en síntesis: que allá para el 12 de septiembre de 1941 Luis F. Balaguer y Dolores Peña otorgaron "escritura de obligación al portador por la suma de ocho mil dólares, intereses y una suma adicional para pagos de costas y honorarios de abogados"; que el 15 de julio de 1948 le hizo efectivo a los citados demandados la suma de cinco mil dólares, por la cual se le entregó "una obligación al portador suscrita el 18 de agosto de 1944, con sus intereses y doscientos cincuenta dólares para costas y honorarios"; que ambas obligaciones gravan una propiedad de los demandados Luis F. Balaguer y Dolores Peña que describió como "Solar radicado en el sitio Pueblo Viejo, término municipal de Guaynabo", describiendo sus linderos y haciendo constar que dicha finca contenía tres edificaciones;(⁵) que, en cuanto a los ocho

---

(⁴) El asiento de presentación lleva el núm. 164 en el Libro Diario 46 de Guaynabo.   El embargo fué anotado al folio 72 del tomo 40 de Guaynabo, finca 2078, anotación letra "A", el 9 de mayo de 1950. "con los defectos subsanables de no aparecer la finca registrada a favor de los demandados y de no acompañarse copia de la demanda origen del pleito". En cuanto a la procedencia de la anotación del embargo en el Registro de la Propiedad, aun cuando la finca no figuraba inscrita, véase *López v. Martínez Hnos.*, 45 D.P.R. 530.

(⁵) La descripción de la finca, según dicha Demanda de Intervención, es la siguiente:

"URBANA: Solar radicado en el sitio Pueblo Viejo, término municipal de Guaynabo, Puerto Rico, lindante por el norte, con una extensión de ciento cuarenta y tres pies ocho pulgadas, lindante con la bahía de San

mil dólares, se tomó anotación en el Registro de la Propiedad en septiembre de 1941, folio 154, tomo 23, de Guaynabo, finca 1339 inscripción "A"; que el 6 de abril de 1950 inició pleito en reclamación de la suma de trece mil dólares, sus intereses y una suma adicional de mil dólares para costas y honorarios de abogados en el Tribunal del Distrito Judicial de San Juan, contra los demandados Luis F. Balaguer y Dolores Peña, del cual "se tomó anotación correspondiente en el Registro de la Propiedad, y se dictó sentencia el día 24 de abril de 1950", y que la hipoteca cuyo pago reclamaba Panax constituía una segunda hipoteca o gravamen sobre uno de los tres inmuebles descritos por el interventor en su demanda.

Contestó Panax aceptando unos y negando otros de los hechos, y como defensas afirmativas expuso entre otras: (1) que de haberse otorgado la escritura y obligaciones señaladas por el interventor en su demanda, dichos documentos "son nulos y sin valor por tratarse de documentos al portador expedidos por los demandados sin que mediara causa o consideración de clase alguna"; (2) que el interventor no era propietario *bona fide* de las obligaciones de referencia; (3) que el pleito iniciado por el interventor en el Tribunal del Distrito Judicial de San Juan contra Luis F. Balaguer y Dolores Peña en reclamación de las obligaciones ya mencionadas, no se fundaba en una transacción *bona fide*, "constituyendo dicho pleito una maniobra de los demandados

Juan, Puerto Rico; y terrenos pertenecientes a la reserva de los Estados Unidos de América; por el sur, en una extensión de ciento veinte pies lindante con un manglar perteneciente a la reserva de los Estados Unidos de América; por el este, en una extensión de sesenta y tres pies ocho pulgadas, lindante con otro manglar perteneciente a la reserva de los Estados Unidos de América; y por el oeste en ciento noventa pies con la calle "Desembarcadero" del poblado Pueblo Viejo de Guaynabo. La finca descrita contiene tres edificaciones: una casa de concreto de dos plantas que mide veinte pies de frente por veinte de fondo y está enclavada en el ángulo noroeste del solar; otra casa terrera construída de concreto y maderas extranjeras, techada de zinc, con balcón y vista hacia la bahía de San Juan, y otro edificio de concreto de dos plantas con cobertizo de diez y seis pies de ancho a lo largo del edificio por treinta pies por su espalda y está enclavado en la parte sureste del solar".

para evitar que la demandante pueda cobrar su legítimo crédito," siendo el mismo "producto de la colusión de los demandados con el Interventor para derrotar la legítima reclamación de la demandante".

El 9 de agosto de 1950 solicitó Panax del Interventor que contestara ciertos interrogatorios([6]) conforme a la 33 de las Reglas de Enjuiciamiento Civil, y el 17 de noviembre, no habiéndolas contestado éste, se desestimó, a instancias de la demandante, la Demanda de Intervención, quedando en el pleito solamente las partes originales en la acción, con la rebeldía anotada a los demandados.

El 12 de enero de 1951 el tribunal celebró una vista para practicar la prueba de la demandante y el 23 del propio mes dictó sentencia condenando a los demandados a pagar a la demandante la suma de cuatro mil dólares de principal, intereses al 6% desde el 17 de diciembre de 1949 hasta su total pago, y quinientos dólares por concepto de costas, gastos y honorarios de abogado según convenido.

Expedido mandamiento de ejecución de sentencia, procedió el Alguacil a la venta en pública subasta de la finca embargada por Panax, adjudicándose a ésta la buena pro,([7]) y otorgándose el 20 de abril de 1951 escritura de venta judicial a su favor.

---

([6]) En autos aparece la Contestación dada a dichos interrogatorios el 9 de mayo de 1951 y radicados en Corte en esa misma fecha, o sea, después de dictada sentencia y celebrada la subasta y otorgada la escritura de venta judicial a favor de Panax. En dicha contestación declara el aquí peticionario ser padre de Dolores Peña, la esposa del co-demandado Balaguer; y que el Mandamiento de Embargo obtenido por él en el pleito instado contra éstos en el Tribunal del Distrito Judicial de San Juan se inscribió en el Registro "el 16 de abril de 1950".

([7]) Del Acta de Subasta certificada por el Alguacil del tribunal a quo aparece lo siguiente:

"Llegado el día y hora del remate hicieron acto de presencia la demandante Panax Food Stores, Inc., por conducto de su abogado, Lcdo. Rodolfo F. Aponte, y el demandado Luis F. Balaguer, personalmente.

"Abierto el acto este Márshal hizo saber que en la mañana de ese día, el Lcdo. Justo A. Casablanca, en representación del Sr. Manuel Peña Burgos, le había hecho entrega de tres documentos intitulados con el nú-

El mismo día 20 de abril compareció nuevamente en autos el interventor, invocando la discreción del tribunal para que le permitiera "defenderse adecuadamente", "en juicio plenario y con oportunidad para las partes". El 11 de mayo siguiente, luego de oír a las partes—y con el allanamiento de la demandante—el tribunal a quo dictó resolución permitiendo "la radicación de una demanda de intervención, la cual deberá [Peña Burgos] notificarla a la parte [demandante], quedando subsistente la sentencia dictada en este caso hasta que otra cosa se disponga por la corte".

El 18 de mayo, en demanda de Tercería de Mejor Derecho, (⁸) Peña Burgos reprodujo en esencia las alegaciones antes reseñadas, de su anterior Demanda de Intervención, contestando Panax en forma esencialmente igual a como contestó en el pleito original.

Así las cosas, Panax presentó "Moción sobre Depósito de Rentas" en la que expuso que a la fecha en que adquirió por venta el inmueble que reclama como suyo el demandante Peña Burgos, el mismo se hallaba "en posesión de Manuel F. Peña y/o de Luis F. Balaguer y de su esposa Dolores Peña, quienes han seguido y siguen en posesión del mismo, ejerciendo sobre él actos de dominio y administración y percibiendo las rentas que el mismo produce", en perjuicio de Panax, solicitando se ordenara al tercerista y a los inquilinos

mero de este caso, sobre una alegada Tercería de Bienes Inmuebles, consistentes en una Declaración Jurada del Sr. Manuel Peña Burgos, una fianza a favor de la Panax Food Stores, Inc., y una Notificación a la dicha corporación de la radicación de esos documentos. Acto seguido entregué copia de dichos documentos al Lcdo. Rodolfo F. Aponte, quien se opuso a la suspensión de la subasta. Examinada la Ley de Tercerías de Bienes Muebles e Inmuebles de 14 de marzo de 1907, es obvio que los documentos radicados por el Sr. Manuel Peña Burgos no cumplen con los requisitos de dicha ley en cuanto a propiedades inmuebles y que este márshal carece de autoridad para suspender la subasta anunciada, por lo cual se anunció que se proseguiría con la misma."

(⁸) Las alegaciones, tanto de ésta como de la anterior demanda, son más propias de una Demanda de Tercería de Dominio que de una de Mejor Derecho, fundada en adjudicación previa al tercerista de la finca vendida a la aquí Interventora.

de dicho inmueble depositar en corte mes por mes las rentas del mismo, para ser entregadas por el tribunal a quien finalmente "logre establecer su mejor derecho" sobre éste, o que en su defecto, "el tercerista preste una fianza por aquella suma que el tribunal estime razonable" para garantizar a la Panax el pago de dichas rentas si el tercerista no prosperare en su acción. De la orden dictada por el tribunal a quo concediendo lo pedido en la moción de Panax en cuanto a depósito de las rentas, recurrió el tercerista para ante este Tribunal en solicitud de *certiorari*. Expedimos el auto.

■■ No estamos llamados en este recurso a hacer determinación alguna sobre derechos dominicales de las partes. La interventora obtuvo en el tribunal recurrido sentencia a su favor, y al ejecutar ésta, se le adjudicó en pública subasta la finca embargada previamente en aseguramiento de sentencia, cuyo título reclama en demanda de tercería el aquí peticionario. Este intentó infructuosamente de suspender la subasta—véase nota (7)—siguiendo equivocadamente ante el Alguacil el procedimiento previsto por ley para la tercería de bienes *muebles*. La orden de ejecución sólo podía suspenderse, tratándose de bienes inmuebles, "mediante interdicto prohibitorio *(injunction)*"—art. 16 (a) de la Ley Proveyendo el Procedimiento en los Casos de Tercerías sobre Bienes Muebles e Inmuebles, aprobada el 14 de marzo de 1907, según enmendada. No habiendo el tercerista hecho esto, se efectuó la subasta, se adjudicó la finca a Panax, y se le otorgó la escritura correspondiente.

A ese título es que opone su demanda de tercería el peticionario. Si ha de prevalecer o no en sus pretensiones, no es cosa sobre la cual podamos en este recurso dictaminar. Pero el título otorgado a Panax crea a su favor un estado de derecho que el tercerista no puede invalidar por meras alegaciones de título mejor. Y si él, antes de vencer en juicio a la demandante, sólo podía suspender la orden de ejecución, y las consecuencias jurídicas derivadas de ella, dando fianza

suficiente y cumpliendo con las demás disposiciones de la ley de *injunction*—según requiere, en el caso de bienes inmuebles, la ley de tercerías ya citada—ciertamente que no podía continuar percibiendo las rentas de la propiedad adjudicada y vendida a la demandante, (°) sin afianzar su devolución a ésta adecuadamente. Aún así continuó percibiéndolas por algún tiempo, hasta que el tribunal recurrido, a instancias de Panax, hizo cumplir su orden de depósito de rentas, sujetas a la ulterior adjudicación del derecho de las partes sobre el inmueble en el pleito de tercería instado por el peticionario.

*Se anulará el auto expedido.*

---

(°) En este caso no se trata de un embargo de rentas no vencidas o cánones futuros de arrendamiento dentro de la doctrina de *Cruz* v. *Corte,* 70 D.P.R. 324.